AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>15 Brookhaven Drive,<br>Trotwood, Ohio 45426<br>including all curtilage | )<br>)<br>)<br>)<br>)<br>) |

Case No. 3:21MJ164

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A. This court has authority to issue this warrant under 18 U.S.C. sections 2703(c)(1)(A) and 2711 (3)(A) and Federal Rule of Criminal Procedure 41.

located in the     Southern     District of     Ohio     , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. section 841 | Possession with intent to distribute and to distribute a controlled substance and |
| 21 U.S.C. section 846 | conspiracy to commit the same. |

The application is based on these facts:

See Attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Raymond J. StClair, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
FaceTime _____ *(specify reliable electronic means).*

Date: 5/3/21

City and state: Dayton, Ohio

_____
*'s signature*

, U.S. Magistrate Judge
*ame and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| IN THE MATTER OF THE SEARCH OF:<br>**15 Brookhaven Drive, Trotwood, Ohio 45426**<br>**Including curtilage and all vehicles within the curtilage** | Case No.   3:21MJ164 |
| --- | --- |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR
## A WARRANT TO SEARCH AND SEIZE

Raymond J. StClair, a Task Force Officer (TFO) of the Drug Enforcement Administration (DEA), United States Department of Justice ("hereinafter referred to as the Affiant"), being duly sworn, deposes as follows:

### INTRODUCTION

1. I am an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. As such, I am an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. I am a law enforcement officer and have been employed by the Dayton Police Department since 2000 and have been assigned to the Narcotics Bureau since January 2005. Since January 2019, I have been assigned to the DEA as a Task Force Officer (TFO). I have extensive prior experience in investigating drug cases that resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs, and other related offenses. I have been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate. These subjects usually attempt to conceal their identities, as well as the locations at which they reside and

1

where they store controlled substances and the illegal proceeds derived therefrom. Through training and experience, I am familiar with the practices of narcotics distributors and sellers, whereby they attempt to conceal the true nature, source and location of proceeds of illegal activity, commonly referred to as money laundering. It has been my experience while conducting other drug investigations that operating drug houses and/or apartments continue to diversify and it is not uncommon to recover different types of illegal drugs from inside the residence. It is also not uncommon to encounter individuals in possession of illegal drugs after leaving from operating drug houses/apartments. In addition, it has been my experience that firearms are commonly kept and located inside operating drug houses and/or apartments.

3. I am participating in an investigation conducted by agents of the DEA and other agencies into the heroin, fentanyl, and cocaine distribution activities of individuals in the Dayton, Ohio area and elsewhere. Heroin is a Schedule I controlled substance. Fentanyl and cocaine are Schedule II substances. I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation, conclusions I have reached based on my training and experience, and upon information I believe to be reliable from the following sources:

   A. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

   B. Information developed from cooperating sources and defendant witnesses;

   C. Public records;

   D. Controlled purchases of heroin, fentanyl, and cocaine by cooperating sources; and,

   E. Recovery of physical evidence.

4. This affidavit does not contain all facts known to me, only those necessary to establish probable cause in support of the request of a search warrant for 15 Brookhaven Drive, Trotwood, Ohio and its curtilage including all vehicles parked within the curtilage (**"TARGET RESIDENCE"**).

2

## FACTS SUPPORTING PROBABLE CAUSE

5. The DEA Dayton Resident Office, in conjunction with the Dayton Police Department, has been conducting an investigation into several individuals who are believed to be trafficking fentanyl amounting to several kilograms. Over the course of the investigation, these individuals have become more diverse in their distribution network selling cocaine, heroin, and methamphetamine. Based on the investigation, a group of subjects appears to be working in a joint effort to distribute fentanyl and other drugs in Dayton, Ohio and are being supplied by Hispanic based sources of supply. Based on the investigation, investigators have reason to believe that Brian HUNTER, Paul DORSEY, Anthony CURLETT, and others known and unknown, have been working together to sell narcotics in Dayton, Ohio since at least the spring of 2019 up until present.

6. During the investigation into the drug trade organization (DTO), the **TARGET RESIDENCE** was identified as being used by Brian HUNTER, Paul DORSEY, Anthony CURLETT, and others known and unknown as a location where members of the DTO met. Specifically, on March 29, 2021, a silver Audi Q7 with an unknown license plate number which was later observed being driven by DORSEY; a Cadillac CTS, Ohio license plate GJA6073 registered to CURLETT; and, a taupe Lincoln MKX, Ohio license plate JES1270 registered to a family member of HUNTER, were observed either parked on the driveway to the **TARGET RESIDENCE** or parked on the street at or near the front of the **TARGET RESIDENCE**.

7. On April 1, 2021, investigators recovered discarded trash from the **TARGET RESIDENCE**. While recovering the discarded trash, investigators could see the silver Audi Q7 used by DORSEY was parked in the carport. Included in the items recovered from the discarded trash was a utility bill for 15 Brookhaven Drive, mail for 15 Brookhaven Drive, mail for Paul DORSEY at 15 Brookhaven Drive, and plastic baggies containing a residue amount of powered substance which field tested for methamphetamine and cocaine.

3

8. On April 22, 2021, investigators recovered discarded trash from the **TARGET RESIDENCE**. While recovering the discarded trash, investigators could see the silver Audi Q7 used by DORSEY was parked in the carport. Included in the items recovered from the discarded trash was a pizza box addressed to the **TARGET RESIDENCE**.

9. On April 26, 2021, I conducted surveillance of the **TARGET RESIDENCE**. During the surveillance, I could see that the silver Audi Q7 used by DORSEY was parked on the driveway, the Lincoln MKX registered to a family member of HUNTER was parked in front of the residence, and a black Dodge, Ohio temporary license plate M234584, registered to HUNTER, was parked approximately one house to the south of the **TARGET RESIDENCE**.

10. On April 29, 2021, investigators recovered discarded trash from the **TARGET RESIDENCE**. While recovering the discarded trash, investigators watched as the silver Audi Q7 used by DORSEY arrived at the **TARGET RESIDENCE** and then departed about thirty minutes later. Included in the items recovered from the discarded trash were baggies with a white powder residue and a vacuum food storage bag containing a white powder residue. From my knowledge and experience, I know that vacuum food storage bags are commonly used to package a large amount of raw "uncut" narcotics (typically a quarter kilo to a whole kilo) for storage and transportation. Based on my knowledge and experience, I know that the food storage bag containing the narcotics is opened when needed and the trafficker would "cut" the narcotics for retail sales then repackage the narcotics into baggies for the retail sales. The powder from the baggies and the food storage bag recovered from the discarded trash field tested positive for cocaine.

11. Based on my training and experience, I know that it is common for individuals involved in drug trafficking to use various tactics to hide narcotics and assets in an attempt to elude law enforcement detection including but not limited to using rental vehicles rented in other persons names, living at locations that are not connected to them directly with the use of rental/owner contracts or utilities, using registered vehicles which are registered to locations not directly connected to them, using cellular phones for their drug business which are prepaid phones with no subscriber information attached to the phone number all the while having a different phone which they use to stay connected

4

to their personal/family life. While using the fictitious information or misinformation, traffickers actually use another location to store narcotics and/or assets which do not directly link them to the location.

12. Based on physical surveillance and evidence, I believe the **TARGET RESIDENCE** is being used to store and/or process items related to drug trafficking.

13. I know from my training and experience in drug investigations that traffickers often maintain in their residences and other locations from which they conduct their drug trafficking activity, controlled substances, books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. They possess items used to package controlled substances. It is also common for these drug traffickers to maintain electronic devices, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. These items are commonly maintained in locations to which drug traffickers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

14. It is common for drug traffickers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, and automobiles; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.

15. Persons engaging in drug trafficking commonly conceal large amounts of currency, financial instruments, precious metals and other items of value. It is common for drug traffickers to purchase items costing over ten thousand dollars. In doing so, traffickers will often violate federal structuring laws (Title 31, U.S.C. Sections 5324) by obtaining several cashier's checks and/or money orders in small increments from several institutions. Traffickers often utilize agents or "smurfs" to purchase these checks or money orders, the purchase of which generates receipts. The proceeds of drug transactions, and evidence of financial transactions relating to the obtaining,

5

transferring, secreting or spending of large sums of money gained through engaging in narcotics activities is often found in the trafficker's residences, businesses, automobiles and other locations maintained for the purpose of concealing their activities.

16. I know that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives, associates, girlfriends or business entities to avoid detection of these assets and accounts by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

17. Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession.

18. I am aware, based on my training and experience that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

19. Based upon the information contained in this affidavit, I believe that there is probable cause to believe persons, known and unknown, are involved in a conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1). I assert that there is probable cause to believe evidence of that violation, along with the fruits and/or instrumentalities of that offense are located at the **TARGET RESIDENCE.**

Raymond J StClair, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this 3rd day of May, 2021.

Sharon L. Ovington
United States Magistrate Judge

6

## Attachment A

**Target Residence 1:** The place to be searched is 15 Brookhaven Drive, Trotwood, Ohio 45426 and the surrounding curtilage including any vehicles parked within the curtilage. 15 Brookhaven Drive is a brown brick with white trim single story structure single family home located on the south side of Brookhaven Drive. Brookhaven Drive is a single block street which starts and ends at Stubbs Drive. The numbers "15" appear in white on a black background displayed on a yard sign near the middle of the front yard. 15 Brookhaven Drive, Trotwood, Ohio 45426 is further depicted in the following photographs.





7

## ATTACHMENT B

### PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 846 and 841(a)(1) including, but not limited to:

A.      Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.      Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.      Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D.      Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.      Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F.      United States currency, precious metals, coins, bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G.      Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H.      Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I.      Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

J.      Firearms and ammunition.

8